JAMES STAPLES *vs.* THE CITY OF BRIDGEPORT ET AL.

Third Judicial District, New Haven, January Term, 1903.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

An Act passed at the request of the city of Bridgeport (Special Laws of 1899, p. 271) authorized and empowered its common council to issue bonds for the erection of a new city hall, which "shall be erected by and under the supervision of a committee consisting of the mayor, the city hall committee, and three other voters to be appointed by the mayor."  *Held* that the Act was permissive and not mandatory upon the city ; that the committee represented the city rather than the legislature, and that the execution of the mandate in regard to the erection of the building by said committee was conditioned upon the decision of the common council to go forward with the improvement.

After the common council had voted to issue the bonds, and a portion of them had been issued, the legislature passed an Act recognizing this action and authorizing a further issue of bonds to provide for the furnishing of the proposed building.  *Held* that until something substantial had been done, the city's option or discretion in the premises was not concluded ; and therefore a later common council might rescind the former vote, subject only to the liability of paying whatever debts or obligations the committee had lawfully contracted before such rescission.

Argued January 21st—decided March 4th, 1903.

ACTION to restrain the defendants from remodeling the existing city hall in Bridgeport and from making any appropriation or laying any tax therefor, brought to the Superior Court in Fairfield County where a demurrer to the complaint was overruled *pro forma*, *Elmer, J.*, and the case was afterwards tried to the court, *Gager, J.;* facts found and judgment rendered granting a permanent injunction, and appeal by the defendants for alleged errors in the rulings of the court. *Error and judgment set aside.*

The case is sufficiently stated in the opinion.

*Thomas M. Cullinan* and *John Cullinan, Jr.*, for the appellants (defendants).

*Robert E. DeForest* and *Jacob B. Klein*, for the appellee (plaintiff).

TORRANCE, C. J. The plaintiff, a taxpayer of Bridgeport, seeks to restrain the city and its officials and agents from making an appropriation and laying a tax to be expended in remodeling the city hall in said city, and to restrain a committee appointed by the common council to remodel said building from proceeding with said work.

The material facts in the case are these: In 1899 and in 1901 the city, at its request, obtained from the General Assembly certain legislation in the form of two resolutions, one approved May 23d, 1899, and the other approved May 21st, 1901. The resolution approved May 23d, 1899 (13 Special Laws, 271), provides in § 1 as follows: " That the common council of the city of Bridgeport be and it is hereby authorized and empowered, when in a legal meeting assembled, by a concurrent vote of a majority of the members of said body, present and absent, subject to the approval or disapproval of the mayor of said city, as provided in the charter of said city, to issue under the corporate name and seal, and upon the credit of the city of Bridgeport, bonds or other certificates of debt, of such denominations as may be deemed for the best interest of the city, to an amount not exceeding in the whole

the sum of three hundred thousand dollars, which bonds shall be denominated Municipal Building Bonds, and the same or the avails thereof when sold as hereinafter authorized, shall be applied by vote of said common council to the purchase of land for, and the erection of a building for the departments of charities and police and the city court of said Bridgeport, and for the removal of the present city hall belonging to said city, and the erection of a new city hall upon the plot of land bounded by State, Broad, and Bank Streets where the present city hall now stands, and to perfect the title to such land if it shall be found necessary, which buildings shall be erected by and under the control and supervision of a committee consisting of the mayor, the city hall committee appointed April fourth, 1898, and three other voters, taxpayers of said city, and not more than two of them to be from the same political party, to be appointed by the mayor; but no portion of said bonds or the avails thereof shall be used for any other purpose whatsoever." The other provisions in § 1, and the other sections of the resolution have no particular bearing upon the questions in the case.

The material parts of the other resolution (13 Special Laws, 870) read, in substance, as follows: That in addition to the bonds which the city was authorized to issue by the resolution approved May 23d, 1899, it is authorized and empowered to issue bonds or other certificates of debt "to an amount not exceeding the sum of two hundred and fifty thousand dollars, which bonds shall be denominated Municipal Building Bonds, and the same or the avails thereof, when sold as hereinafter authorized, shall be applied by the vote of said common council for the purposes set forth in said special law, and also for the furnishing of the buildings, and the completion of the grounds and approaches to said buildings, authorized to be constructed by said special law and under the direction, control, and supervision of the committee named in section one of said special law as amended by section four of this resolution; but no portion of said bonds or the avails thereof shall be used for any other purpose whatsoever." Section four of this resolution amends § 1 of the first resolu-

tion, by striking out the words "the mayor" and inserting in lieu thereof the words "Hugh Sterling"; also by striking out the words "and three other voters, taxpayers of said city, and not more than two of them to be from the same political party, to be appointed by the mayor," and inserting in lieu thereof the words, "and the three other persons, voters and taxpayers of said city, appointed by the mayor June 5, 1899." It also adds the words, "and said committee shall also have the direction, control, and supervision of the furnishing of said buildings and the completion of the grounds and approaches to said buildings." The other parts of said resolution have no bearing upon the questions in the case.

In June, 1899, and in October, 1901, the common council and mayor, acting under said resolutions, authorized the issue of the full amount of the bonds therein provided for, for the purposes therein named. Out of the bonds authorized by the resolution of the General Assembly approved May 23d, 1899, $125,000 have been issued by vote of the common council; the remainder have been printed but not signed nor issued, while the bonds authorized by the other legislative resolution have not even been printed. In November, 1901, a new common council was elected, and on the 25th of that month it passed certain resolutions, the substance of which may be stated as follows: (1) that no action shall be taken to remove the present city hall building, or to erect a new one; (2) that no part of the avails of the issue of bonds shall be used for the expense of such removal, or for the erection of a new city hall, nor "except for payment of legal obligations of the city arising from contracts already made and entered into by the committee" designated in the legislative resolutions; and bonds sufficient for that purpose were authorized "to be issued, signed and sold;" (3) that all previous action of the common council inconsistent with the above, "is hereby repealed and rescinded;" (4) that the action of the common council, in authorizing the issue of bonds under the second of the legislative resolutions, is "repealed and rescinded"; (5) that the mayor be author-

Staples v. Bridgeport et al.

ized to appoint a committee to remodel the present city hall and adapt it to the needs of the city.

The mayor appointed such a committee, and it was proceeding with the work assigned to it when it was stopped by the injunction issued in this case.

The alterations in the present city hall, as proposed by the committee appointed by the mayor, will cost more than $75,000, and the city intends to appropriate $70,000 to pay for said work and to lay a tax therefor.

Upon these facts the controlling question is whether the provisions of the legislative resolutions relating to the city hall are mandatory or merely permissive; whether they must be carried out, whether the city desires to do so or not, or whether it is left with the city to carry them out or not as it sees fit. If they are mandatory in this sense the judgment of the court below should stand, otherwise not.

We think the provisions are permissive and not mandatory. Both resolutions were passed at the request of the city, and they concern matters in which the city was interested and the State was not. The city desired to obtain power to issue bonds for certain specific purposes, and the legislature granted that power with the limitations asked for. Under these circumstances, if the legislature had intended to command the city to do the things authorized to be done, without regard to the subsequent action of the city, or had intended to command the committee to do those things without regard to the action of the city, we should expect to find that intent expressed in no uncertain language; but no such language appears in these resolutions. The resolutions are concerned mainly with the power to issue bonds, and the limitations and restrictions placed upon that power. The buildings are mentioned only incidentally in describing the purposes for which alone the bonds may be issued and used. The power to issue bonds is granted in these words: "That the common council . . . be and it is hereby authorized and empowered" to issue bonds. This clearly is not a mandate, a command, to issue bonds, it is the grant of a power or privilege to do so, to be exercised or not as the city sees fit. The

intent to compel the city to issue bonds against its will clearly cannot be gathered from this language. The only other language in the resolutions which is or can be relied upon to sustain the plaintiff's claim is the following: "Which buildings shall be erected by and under the control and supervision" of the committee designated in the resolutions. Undoubtedly this does provide that the committee shall have sole charge of the erection of the buildings; but does it also provide that they must be erected, and that the committee must erect them without reference to the action of the city? We think not. To say that the words in quotation marks, when read in connection with the context, embody a legislative mandate requiring the committee to remove the city hall and build a new one, in opposition to the action and wishes of the city and its inhabitants, is to put upon them a very strained construction, and one which they will not bear. The committee is in no sense a committee of the legislature appointed to carry out some mandate of that body without regard to the action or wishes of the city; it is rather a committee of the city, appointed by the legislature at the request of the city, through whom alone the city could carry out the public improvements it was authorized by the resolutions to make if it saw fit. We think the language last above quoted means no more than this: that if, or provided, the city shall go forward with such public improvements, the work shall be done under the sole charge and supervision of this committee.

If the city had never acted under these resolutions, we think it clear that the committee could have done nothing under them. The committee could not act until the city had first acted; but the city having acted, the claim is made that it cannot subsequently rescind its action. The precise question is whether, after the city has in effect voted to remove the city hall and build a new one and to issue bonds therefor, it can, before substantially anything is done, or any bonds issued, under its vote, rescind that vote.

We think it can. It is under no obligation to remove the city hall and build a new one, nor to issue bonds therefor; and having voluntarily voted to do so, it may rescind that

vote at least before it has been substantially acted upon, subject only to the liability of paying, out of the bonds it is authorized to issue, whatever debts and obligations the committee may have lawfully contracted or incurred previous to such rescission. Upon the facts as they appear of record we think the committee designated in the resolutions has no power at present to remove the city hall, or to build a new one; nor will it possess such power until the city shall again decide to go forward with such work. Both parties, in their briefs, concede that if the committee has no such power, the city might lawfully do what it has been enjoined from doing; and the judgment below is based upon the assumption that the committee has such power. As this assumption is not true, judgment upon the facts as they appear of record should have been in favor of the city.

There is error, the judgment is set aside, and the judgment of this court will be entered as of January 22d, 1903.

In this opinion the other judges concurred.