[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action is a tax appeal taken by the Yale Church of Truth from a decision of the Board of Assessment Appeals ("Board") of the Town of Windsor Locks in regard to properties located at 224 South Elm Street and10-16 Suffield Street.
In 1996, shortly after this appeal was filed, the Town of Windsor Locks ("Town"), filed a motion to dismiss the complaint on the basis that the plaintiffs appeal was not taken within two months of the Board's decision. The court, Mulcahy, J., denied the motion, finding that the plaintiff's appeal dated May 17, 1996 was properly taken within two months from the decision of the Board dated March 22, 1996 pursuant to General Statutes § 12-117a, although the last town-wide revaluation date was October 1, 1989.
In August, 2000, just prior to trial, the Town raised the issue that Ralph J. Lombardi is not the owner of the subject two properties, and, therefore, is not an aggrieved party for the purpose of this appeal. This claim arose under the following circumstances. The present action was brought in the name of "Yale Church of Truth, Ralph J. Lombardi, Trustee." Lombardi entered his appearance as a pro se party plaintiff. The Town, as we have previously noted, moved to dismiss this action in 1996 for lack of subject matter jurisdiction based upon an alleged failure to timely bring the appeal. Lombardi filed an objection to the motion and argued in court against the motion. The Town did not raise the CT Page 757 claim that Lombardi could not represent the Yale Church of Truth until the time of trial. At trial, Lombardi moved to amend the complaint to allege that he was the owner of the two properties for the purpose of this appeal. This motion was granted by the court, and the pleadings were amended to state that Lombardi is the owner of the subject properties.
On July 7, 1978, Lombardi, executed and recorded a Declaration of Trust in the Windsor Locks Land Records. (See Plaintiffs Exhibit J.) The Deed of Trust recited that Audrey J. Lombardi had conveyed 10-16 Suffield Street and 224 South Elm Street, Windsor Locks to Ralph J. Lombardi. The Deed of Trust further recited that the properties were being held in trust for the use and benefit of Yale Church of Truth, 224 South Elm Street, Windsor Locks. The Deed of Trust reserved to Ralph J. Lombardi the right to mortgage the premises and to collect the income for the benefit of the trust or for his own individual benefit. Lombardi further reserved to himself the power to amend or revoke the trust without obtaining the consent of any beneficiary of the trust during his lifetime. Pursuant to the Declaration of Trust, Lombardi executed and recorded a quit-claim deed from himself to Ralph J. Lombardi, Trustee under the terms of the Declaration of Trust. Subsequently, Ralph J. Lombardi quit-claimed the trust properties to Alice L. Valente as a trustee of the trust. Alice L. Valente quit-claimed her interest in the trust to Sylvia Novgrad as trustee under the trust. On November 9, 1989, Sylvia Novgrad executed and recorded her resignation as trustee of the trust reciting that Ralph J. Lombardi would be the trustee of the trust. (Plaintiffs Exhibit K.) It is not necessary for us to determine the ownership of the subject two properties for the purpose of marketability of title, but only to determine whether Ralph J. Lombardi held an ownership interest in the subject properties to qualify as an aggrieved party for the purposes of this appeal.
"The test for determining aggrievement encompasses a well settled twofold determination: first, the party claiming aggrievement must demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest shared by the community as a whole; second, the party claiming aggrievement must establish that this specific personal and legal interest has been specially and injuriously affected by the decision." Windham TaxpayersAssn. v. Board of Selectmen, 234 Conn. 513, 523, 662 A.2d 1281 (1995). Lombardi has an interest in the subject two properties by virtue of the terms of the Declaration of Trust which reserves to himself the right to amend or revoke the trust and the power to mortgage the premises during his lifetime. These reservations are indices of ownership of title and as such are affected by the amount of taxes levied against the properties. Under these circumstances, since Lombardi has amended his appeal to reflect his ownership in the subject properties, he is an aggrieved party CT Page 758 for the purposes of this appeal.
The plaintiff claims that his properties were excessively valued by the assessor on the grand list of October 1, 1989, the date of the last town-wide revaluation. 224 South Elm Street is a small one and one-half story cape containing a total of 7 rooms with 3 bedrooms and 2 bathrooms above grade. This subject property has a full basement with 204 square feet finished with one bath, and a two car detached garage. The second floor of the subject has one bedroom finished. The remaining portion of the second floor is unfinished. The house is on a 1/2 acre lot in a Residence A 1 family zone and was constructed in 1952.
224 South Elm Street was valued by the assessor on the list of October 1, 1989 at $390,085, with an assessment at 70% of value of $273,060. The Board reduced the fair market value of 224 South Elm Street to $244,057, resulting in an assessment of $170,840. At the time of trial, the assessor was of the opinion that the fair market value of the subject, on the grand list of October 1, 1989, was $193,614 resulting in an assessment of $135,530. The assessor relied on four comparable sales of single family homes in Windsor Locks. (See Defendant's Exhibit 2.)
The plaintiff's appraiser, David W. Bearce, Jr., was of the opinion that 224 South Elm Street had a fair market value, as of October 1, 1989, of $165,000, resulting in an assessment of $115,500. Bearse relied on three comparable sales of single family homes in Windsor Locks. (See Plaintiffs Exhibit A.)
After analyzing the comparables selected by Bearce and the assessor, we find that the following comparables used by Bearce and the assessor are the most credible: 9 James Street; 17 Pershing Road; 19 Tracy Circle; and 440 Elmwood Drive. Although none of the four comparables selected are individually the best, collectively, they give us a good indication of value. Using the four comparables, we conclude that the fair market value of 224 South Elm Street, as of October 1, 1989, was $174,500.
Turning to 10-16 Suffield Street, we note that the assessor's street card attached to plaintiffs exhibit B shows that this property was assessed for $375,060 on the list of October 1, 1989. With an assessment of $375,060, the fair market value of this property would be $535,800. The same street card shows a reduction in the assessment of this subject property on the list of October 1, 1990, from $375,060 to $220,830. With an assessment of $220,830, the fair market value of this subject property on the list of October 1, 1990 would be $315,471. In 1995, the Board reduced the assessment to $198,830, which indicates a fair market value of $284,043. However, at the time of trial, the assessor was of the opinion that 10-16 Suffield Street had a fair market value, as of October CT Page 759 1, 1989, of approximately $250,000 based upon the cost approach. The assessor also looked at four sales of multifamily properties and determined that the 1989 fair market value of 10-16 Suffield Street was $252,370 based upon the sales comparison approach. (See Defendant's Exhibit 3.)
10-16 Suffield Street is a four family, wood framed, two story apartment building containing four rentable units. Each of the subject's four units contain a living room, dining room, kitchen, laundry, two bedrooms and one bath for a total of 992 square feet in each unit. The building was constructed in 1902. As of October 1, 1989, the units were renting for $525 each per month, which produced a total monthly income of $2100.
Bearce found no comparable four unit apartment buildings in Windsor Locks for the purpose of developing market rent for an analysis of value under the income approach. However, Bearce did find comparable four unit buildings in the adjacent town of Enfield and a similar three unit building in the adjoining town of Suffield. These units were used by Bearce to develop his income approach by examining the contract rentals of the subject property and the market rentals of the comparables. Comparable #2, 5 Maple Avenue, Enfield, had a gross monthly rental income of $2220. Comparable #3, 19-21 Maple Avenue, Enfield, had a gross monthly rental income of $2155. Bearce developed a gross monthly income multiplier to arrive at a value using the income approach. Basically, a gross income multiplier is the ratio of the sale price to the annual gross income at the time of sale. The Appraisal of Real Estate, (10th
Ed. 1992) p. 476. In using the gross income multiplier, appraisers must be careful because, "the properties analyzed must be comparable to the subject property and to one another in terms of physical, locational, and investment characteristics. Properties with similar or even identical multipliers can have very different operating expense ratios and, therefore, not be comparable for valuation purposes." Id. Bearce considered the cost approach, the income approach and the comparable sales approach to value, but relied on the income and comparable sales approach. We find the income approach and the comparable sales approach to be the most credible methods to determine the value of this property as of October 1, 1989. Bearce arrived at a fair market value of $191,000, as of October 1, 1989, supported by the income and the market sales approaches. As Bearce noted in his appraisal report: "The income approach is well supported by local rental data within the subject community. Primary emphasis was given to the market approach. The market approach is supported by the income . . . approach to value." (Plaintiffs Exhibit B.)
In analyzing the methods of determining value as used by the assessor CT Page 760 and that used by Bearce, we conclude that the income and market approaches to value, as used by Bearce, are far superior to the cost approach used by the assessor. The subject property at 10-16 Suffield Street was constructed in 1902 and was in average condition. The cost approach is not a credible approach to use in this case, but rather, is more appropriately used in valuing new or nearly new improvements not a building such as the subject that is subject to a high rate of deterioration and obsolescence. The Appraisal Institute, The Appraisal of Real Estate (10th Ed., 1992) p. 80. We recognize that the valuation of real estate is not an exact science. MacLean v. Town of Darien,43 Conn. App. 169, 173, 682 A.2d 1064, cert. denied, 239 Conn. 943,686 A.2d 122 (1996). However, having reviewed and weighed the opinions of the appraisers, the claims of the parties in light of all the circumstances in evidence bearing on value, and our own general knowledge of the elements going to establish value, we conclude that the fair market value of 10-16 Suffield Street as of October 1, 1989, was $195,000. See Torres v. Waterbury, 249 Conn. 110, 118, 733 A.2d 817
(1999).
Accordingly, judgment may enter in favor of the plaintiff Ralph J. Lombardi, without costs to either party. As stated above, we conclude that, as of October 1, 1989, the fair market value of 224 South Elm Street was $174,500, and the fair market value of 10-16 Suffield Street was $195,000. The assessor shall reduce the assessments on these two properties in accordance with this decision beginning on the grand list of October 1, 1995, and continuing for subsequent grand lists until the next town-wide revaluation.
 Arnold W. Aronson Judge Trial Referee