JOSEPH M. RABBITT v. EDWARD P. LEONARD ET AL.

SUPERIOR COURT     JUDICIAL DISTRICT OF     FILE No. 172158
FAIRFIELD AT BRIDGEPORT

Memorandum filed August 2, 1979

*Owens & Schine,* for the plaintiff.

*Carl R. Ajello,* attorney general, and *Frank Rogers,* assistant attorney general, for the defendants.

SADEN, J. The plaintiff commenced this action complaining of the revocation of his pistol permit without prior notice and an opportunity to be heard. He seeks a writ of mandamus ordering the reinstatement of his permit; a hearing before any future revocation is effected; a temporary injunction restraining any attempt to enforce the revocation; and a declaratory judgment that the defendant's action in revoking the permit without notice or a

hearing is unconstitutional.[1] The defendant's motion to dismiss on the ground that the plaintiff did not exhaust his administrative remedies was denied by the court, which also issued a temporary injunction against enforcement of the revocation.

When governmental action deprives an individual of a liberty or property interest, as those terms are used in the fourteenth amendment to the United States constitution and article first, § 10, of the Connecticut constitution, procedural due process imposes constraints on the governmental action involved. *Mathews* v. *Eldridge,* 424 U.S. 319, 332. It is a fundamental principle that property cannot be taken without procedural due process. *Society for Savings* v. *Chestnut Estates, Inc.,* 176 Conn. 563; *Roundhouse Construction Corporation* v. *Telesco Masons Supplies Co.,* 168 Conn. 371, 376.

The court will make every presumption in favor of validity when considering the constitutionality of legislation, and will sustain the act unless the challenger establishes its unconstitutionality beyond a reasonable doubt. *New Milford* v. *SCA Services of Connecticut, Inc.,* 174 Conn. 146, 148. It must also be proved beyond a reasonable doubt that a constitutionally protected right of the challenger has been adversely affected by the statute. *Society for Savings* v. *Chestnut Estates, Inc.,* supra, 569.

---

[1] It should be noted that under General Statutes § 29-32b (b) an appeal to the board of firearms permit examiners is a hearing de novo. Such an appeal is without prejudice "to any other course of action open . . . in law or in equity." But it is only on an *appeal* to the board of firearms permit examiners that a hearing de novo is available.

The present action is not such an appeal and the plaintiff's complaint does not seek a hearing de novo. Instead, he challenges the constitutionality of two statutes on a procedural due process basis for want of notice and a hearing prior to revocation, claiming that because of such lack of due process he is entitled to mandamus to reinstate the pistol permit and to have such notice and a hearing before revocation. The question thus is really a matter of law.

The plaintiff argues that by the defendant's action he was denied the fundamental right to bear arms and to defend himself, a right he claims he has under article first, § 15, of the Connecticut constitution which provides that "[e]very citizen has a right to bear arms in defense of himself and the state." This case appears to be one of first impression in Connecticut. The question itself, however, is not new and has been decided in the negative under the second amendment to the United States constitution. *United States* v. *Cruikshank,* 92 U.S. 542, 553. The obvious purpose of the second amendment was to assure the continuation and the effectiveness of the state militia. It must therefore be interpreted and applied with that end in view. *United States* v. *Miller,* 307 U.S. 174, 178; *United States* v. *Oakes,* 564 F.2d 384 (10th Cir.), cert. denied, 435 U.S. 926. More recently it has been stated as an established principle that there is no absolute constitutional right to possess a firearm. *United States* v. *Day,* 476 F.2d 562, 568 (6th Cir.).

The question has also been faced by several states. State constitutions which provide to the "people" the right to keep and bear arms for the common defense do not necessarily grant individuals that same right. The right is "not directed to guaranteeing individual ownership or possession of weapons." *Commonwealth* v. *Davis,* 369 Mass. 886, 888. Rather, the word "people" refers to a collective body, the militia, and does not imply the absolute right of an individual to carry a gun. *Junction City* v. *Lee,* 216 Kan. 495. The Georgia constitutional provision was never intended to mean that an individual had some inherent right to keep and carry arms or weapons. *Carson* v. *State,* 241 Ga. 622. See also *People* v. *Dubose,* 42 Cal. App. 3d 847; *Burton* v. *Sills,* 53 N.J. 86; *Matter of Guida* v. *Dier,* 84 Misc. 2d 110, 111 (N.Y.); *State* v. *Fant,* 53 Ohio App. 2d 87.

Every provision of the constitution must be construed to give it effective operation and to suppress the mischief at which it was aimed. *Palka* v. *Walker,* 124 Conn. 121, 126–27. Effect must be given to each and every word in the constitution unless there is some clear reason for not doing so. *Cahill* v. *Leopold,* 141 Conn. 1, 21. "If the words have a doubtful meaning, or are susceptible of two meanings, they should receive that which will effectuate the intent of the framers of the Constitution and the general intent of the instrument. *People* v. *Fancher,* 50 N.Y. 288, 292. 'Where its words are plain, clear, and determinate they require no interpretation; and it should, therefore, be admitted, if at all, with great caution, and only from necessity, either to escape some absurd consequence, or to guard against some fatal evil. . . . Contemporary construction is properly resorted to, to illustrate and confirm the text, to explain a doubtful phrase, or to expound an obscure clause. . . . It can never abrogate the text, . . . it can never narrow down its true limitations, it can never enlarge its natural boundaries.' 1 Story on the Constitution (5th Ed.) §§ 405, 407; *State ex rel. Morris* v. *Wrightson,* 56 N.J.L. 126, 206 . . . . 'In construing any act of legislation, whether a statute enacted by the legislature, or a constitution established by the people as the supreme law of the land, regard is to be had, not only to all parts of the act itself, and of any former act of the same lawmaking power, . . . but also to the condition, and to the history, of the law as previously existing, and in the light of which the new act must be read and interpreted.' *United States* v. *Wong Kim Ark,* 169 U.S. 649, 653 . . . ." *Borino* v. *Lounsbury,* 86 Conn. 622, 625.

The language of article first, § 15, of the Connecticut constitution, which states that "[e]very citizen has a right to bear arms in defense of himself and

the state," is different from that of the second amendment and the other state constitutional provisions discussed above. The use of the conjunction "and" gives every citizen a dual right; he has the right to bear arms to defend the state, a clear reference to the militia; and he may also bear arms to defend himself. It appears that a Connecticut citizen, under the language of the Connecticut constitution, has a fundamental right to bear arms in self-defense, a liberty interest which must be protected by procedural due process.[2]

The next question then becomes: Does the statutory scheme for permit revocation satisfy the due process requirements of the fourteenth amendment?

Section 29-32 of the General Statutes provides: "Any permit for the carrying of any pistol or revolver may be revoked by the authority issuing the same for cause. Upon the revocation of any permit, the person whose permit is revoked shall be notified in writing and such permit shall be forthwith delivered to the authority issuing the same. Upon the revocation of any local permit, the authority

---

[2] The court cannot find in this case any *property* interest in the pistol permit.

In *Bell* v. *Burson*, 402 U.S. 535, the Supreme Court held that a state-issued driver's license is a property interest of the holder. The court noted (p. 539), however, that "[o]nce licenses are issued, . . . their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment." The plaintiff in *Bell* was a minister who needed his car to reach his parishioners.

There is no evidence that the plaintiff here needs his pistol in pursuit of his livelihood. The situation is different from the case of *Martin* v. *Conlisk*, 347 F. Sup. 262 (N.D. Ill.) where a special policeman's certificate of appointment was revoked. Without the certificate the plaintiff could not function as a special policeman. The court held that under those circumstances prior notice and a hearing were required before the certificate could be revoked.

issuing the same shall forthwith notify the commissioner of public safety and, upon the revocation of any permit issued by said commissioner, he shall forthwith notify the authority issuing such local permit, if any, which the records of said commissioner show as having issued a currently valid permit to the holder of the revoked state permit. Any person who fails to surrender such permit within five days of notification in writing of revocation thereof shall be guilty of a class C misdemeanor." It is not mandatory that a permittee receive notice and hearing before revocation of the permit becomes effective; he may take action for reversal *after* the revocation.

Section 29-32b (b) of the General Statutes provides in part: "Any person aggrieved by any . . . revocation of a permit issued . . . may, within ninety days after receipt of notice of such . . . revocation, . . . and without prejudice to any other course of action open to him in law or in equity, appeal to the board. On such appeal the board shall inquire into and determine the facts, de novo, and unless it finds that such . . . revocation . . . would be for just and proper cause, it shall order such permit to be . . . restored. . . ." Thus, the plaintiff could have obtained a de novo hearing before the board of firearms permit examiners. He failed to exercise that right and instituted this action. The concept of due process is flexible and depends upon the facts of each situation. *Morrissey* v. *Brewer,* 408 U.S. 471, 481. Three distinct factors are generally considered in determining what due process requires in a specific situation. They are, as outlined in *Mathews* v. *Eldridge,* 424 U.S. 319, 335: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any,

of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

The plaintiff's private interest here is the continued possession of his pistol permit and his ability to carry his pistol on his body. Unless the plaintiff has shown that he needs the weapon in connection with his livelihood or that it is absolutely necessary for his self-defense, this interest, although important, is not substantial. An important factor in assessing the impact of official action on a private interest is the duration of any potentially wrongful deprivation of the property interest. *Mackey* v. *Montrym,* 443 U.S. 1, 12. Here, the plaintiff could have requested a hearing within ninety days of receipt of the notice of revocation, but he failed to do so.

The second factor—the risk of erroneous deprivation and the probable value, if any, of safeguards—requires an assessment of the relative reliability of the procedures used and the substitute procedures sought. *Mackey* v. *Montrym,* supra, 10. The due process clause does not require error-free determinations. *Greenholtz* v. *Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 7. It must be remembered that errors may occur whenever human beings are involved. See *Storace* v. *Mariano,* 35 Conn. Sup. 28 (pistol permit revocation based upon personal prejudices).

The Supreme Court has required a hearing closely approximating a trial only in *Goldberg* v. *Kelly,* 397 U.S. 254, 259. When prompt post-deprivation review is available for correction of administrative error, generally no more has been

required "than that the pre-deprivation procedures used be designed to provide a reasonably reliable basis for concluding that the facts justifying the official action are as a responsible governmental official warrants them to be." *Mackey* v. *Montrym,* supra, 13.

Section 29-32 of the General Statutes provides that the authority which issues a permit may revoke it for cause. Depending upon where the applicant lives, the issuing authority is either the chief of police, or, where there is none, the warden of the borough or the first selectman of the town. General Statutes § 29-28. They are officials who would immediately become aware of cause to revoke when it arises. Normally they are responsible people who presumably would do their best to ascertain the facts and to perform their duties before revoking a permit.

The plaintiff seeks pre-revocation notice and a hearing. Frequently there could be a long delay before such a hearing could be held. At issue is the right to carry a dangerous weapon. Time is of the essence in such a situation. Under the statute, the plaintiff may request a hearing as soon as he receives notice of the revocation. Any error in the revocation can be corrected within a reasonable period of time. The present scheme provides a reasonably reliable procedure for checking the validity of the facts upon which the revocation is based.

The government's interest, including the function involved and the fiscal and administrative burdens that the plaintiff's suggested procedures would produce, is the final factor to be weighed. The governmental interest here is to protect the safety of the general public from individuals whose conduct has shown them to be lacking the essential character or

temperament necessary to be entrusted with a weapon. *Matter of Pelose* v. *County Court of Westchester County,* 53 App. Div. 2d 645 (N.Y.).

"Reasonable gun control legislation is within the police power of a legislative body to enact; any such restriction imposes a restraint or burden upon the individual, but the interest of the governmental unit is, on balance, manifestly paramount." *Mosher* v. *City of Dayton,* 48 Ohio St. 2d 243, 247.

The states have always had great leeway in adopting summary procedures to protect the public health and safety. *Mackey* v. *Montrym,* supra, 17. Unlike the situation in *Society for Savings* v. *Chestnut Estates, Inc.,* 176 Conn. 563, here the governmental or general public interest is one that could be characterized as extraordinary.

The summary nature of a pistol permit revocation is vital to protect the public safety. A permittee who is, in fact, unfit to carry a pistol could conceivably do a great deal of harm if given advance notice that his permit might be revoked; it could even result in the loss of human life. The risk is too great.

The requirements of procedural due process are met by General Statutes §§ 29-32 and 29-32b. The temporary injunction heretofore ordered is dissolved; mandamus is denied; and judgment is rendered in favor of the defendant, with costs.

Judgment may enter accordingly.