[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff Philip Rizzuto, Jr. appeals the decision of the defendant board of firearms permit examiners revoking his permit to carry a pistol or revolver. The board acted pursuant to General Statutes § 29-32b. The plaintiff appeals pursuant to § 4-183. The parties filed briefs to the court but waived oral argument on the appeal. The court finds the issues in favor of the defendant board.
On November 23, 1994, the commissioner of public safety notified the plaintiff that his permit to carry a pistol or revolver was revoked as the result of an incident that took place at a bar in Rocky Hill on September 2-3, 1994. The plaintiff appealed the commissioner's decision to the board. On March 13, 1995, following a hearing, the board affirmed the decision of the commissioner. The plaintiff appealed the decision of the board to this court. See Rizzuto v. Board of Firearms Permit Examiners,
Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. CV95 054 95 19 (November 16, 1995) (RizzutoI).
In Rizzuto I, this court (Dyer, J.) remanded the case to the board with instructions to make certain findings of fact and conclusions and to render a new decision accordingly. Specifically, the court directed the board to state whether it found that the plaintiff was intoxicated at the time he was carrying his handgun during the September 1994 incident. The court also directed the board to state more precisely the facts that it found concerning the plaintiff's stashing the weapon in the trunk of his car and to articulate why those facts were grounds for revocation of the permit.
On January 24, 1996, the board rendered a new decision in accordance with Judge Dyer's order of remand. It is that new decision which is the subject of this appeal. CT Page 875
In rendering its new decision, the board did not have any new evidence, but rather relied on evidence adduced at the original hearing. The board found that the plaintiff went to the bar on the evening of September 2, 1994, with his handgun locked in the trunk of his car. After consuming several beers, the plaintiff left the bar in the early morning of September 3. He removed the gun from the trunk and put it in his pocket. Shortly thereafter, he became embroiled in an altercation in the parking lot of the bar and was injured. The board did not find that the plaintiff ever removed the gun from his pocket or otherwise threaten to use it during the fight. The board did find, however, that the plaintiff was intoxicated at the time of the fight and while he had the gun in his pocket. The board also found that such fights are common occurrences at that bar and that the bar is a hang-out for various gangs. The board found that the plaintiff knew about the prevalence of fights at the bar.
Based on the findings of fact summarized above, the board determined that the plaintiff used "poor judgment" by leaving a handgun in an unattended car in the parking lot of that bar, "where it was at high risk of being stolen" and, subsequently, by carrying the gun on his person while he was intoxicated. The board concluded that the plaintiff is not a "suitable person" to hold a permit and, accordingly reaffirmed its original decision to revoke the permit.
The plaintiff advances essentially two arguments in support of his appeal: (1) that the board's determination that the plaintiff is not a suitable person to hold a handgun permit was arbitrary, capricious and not supported by the evidence and (2) that the provision in General Statutes § 29-32 authorizing the board to revoke a handgun permit for cause is unconstitutionally vague. The court will consider these claims in inverse order.
The plaintiff's argument concerning unconstitutional vagueness requires a review of the applicable statutes.
General Statutes § 29-35 prohibits anyone from carrying a pistol or revolver outside his or her home or business without a permit issued pursuant to § 29-28. That statute sets forth the criteria-and procedure for obtaining a permit to carry a handgun. It is a two-step procedure under which the applicant first obtains from the appropriate local official a permit to carry a pistol in his or her town of residence and then obtains a CT Page 876 state-wide permit from the state police, acting in behalf of the commissioner of public safety. The statute provides, as relevant to this appeal, that the local official will grant the permit "provided such authority shall find that such applicant intends to make no use of any pistol or revolver which he may be permitted to carry . . . other than a lawful use and that such person is a suitable person to receive such permit." The statute provides no criteria for issuance of the state-wide permit by the state police but provides, merely, that the "commissioner may, upon application, issue to any holder of any [local] permit, a permit to carry a pistol or revolver within the state."
General Statutes § 29-32 establishes the summary procedure by which either the local authority or the commissioner may revoke a permit. As relevant to this appeal, that statute provides, "Any permit for the carrying of any pistol or revolver may be revoked by the authority issuing the same for cause. . . . ."
General Statutes § 29-32b(b) sets forth the standards for the defendant board to follow in reviewing a revocation of a permit under § 29-32 by the local authority or the commissioner. "On such appeal the board shall inquire into and determine the facts, de novo, and unless it finds that such . . . revocation . . . would be for just and proper cause, it shall order such permit to be . . . restored. . . ." General Statutes § 29-32b(b).
As the board indicates in its decision, and argues in its brief to this court, it considers that a determination that an individual is not "a suitable person, in the language of §29-28, is "just and proper cause" for revocation of a permit under § 29-32b.
The plaintiff argues that there are no statutory definitions, regulations or court decisions to define the terms "suitable person" or "just and proper cause." He claims, therefore, that a permit holder is unable to ascertain in advance the standard of conduct that is required in order to avoid forfeiture of the permit, citing Amsel v. Brooks, 141 Conn. 288 (1954) and Connallyv. General Construction Co., 269 U.S. 385 (1925). The court disagrees.
In Amsel v. Brooks, supra, at 298, the Supreme Court held that a statute "must afford some comprehensible guide, rule or CT Page 877 information as to what must be done and what must be avoided, to the end that an ordinary member of society may know how to comply with its requirements." With regard to the statutes under consideration in the present case, in Dwyer v. Farrell,193 Conn. 7, 12 (1984), the Supreme Court held that "General Statutes §§29-28 through 29-38 clearly indicate a legislative intent to protect the safety of the general public from individuals whose conduct has shown them to be lacking the essential character or temperament necessary to be entrusted with a weapon," quotingRabbitt v. Leonard, 36 Conn. Sup. 108 (1979), and essentially adopted the judicial gloss imposed on the statute by that decision.
The court must "indulge in every presumption in favor of the statute's constitutionality . . . In so doing, we take into account any prior interpretations that [the Supreme Court has] placed on the statute." State v. Indrisano, 228 Conn. 795, 805
(1994)." (N)o matter how specific the standard or standards are stated, there is almost always a penumbra which requires the administrative agency to exercise a judgment as to whether the facts before it fall within or outside the legislative design."Leib v. Board of Examiners for Nursing, 177 Conn. 78, 90 (1979). In exercising its judgment as to whether facts fall within the ambit of the term "just cause," the board must find that the facts constitute a "reasonable ground" for the adverse action as opposed to a "frivolous or incompetent ground." Cassella v. CivilService Commission, 202 Conn. 28, 37 (1987). To be reasonable, the basis of the agency' s action should be consistent with the general purposes of the statutory scheme. Id., 38.
In line with the cases cited above, the defendant board had the task of exercising its judgment and applying the term "just and proper cause" to the facts of the case and in the context of the general intent of the gun permit statutes as interpreted by the Supreme Court in State v. Indrisano, supra. In essence, the board had to determine, on the basis of the evidence it had of the plaintiff's conduct, whether the plaintiff possessed "the essential character or temperament necessary to be entrusted with a weapon." In making this determination, the cases require the board to give paramount consideration to the protection of the public safety.
In this court's view, the statutes in question, given the judicial gloss cited above, are not unconstitutionally vague. In order to avoid forfeiture of the permit, a permit holder's CT Page 878 conduct in the exercise of rights granted by the permit must demonstrate that he or she, as a permit holder, does not pose an immediate or potential danger to the public. If the board finds on the basis of evidence in the particular case that the permit holder has acted so as to pose an immediate or potential danger, the board may determine that the person is "unsuitable" to hold the permit, which is "just and proper cause" for revoking it. Although this statutory standard requires careful consideration of the facts of the individual case and the exercise of judgment and discretion by the board, those factors do not make the standard less ascertainable nor more difficult to obey. This standard is not based on unrevealed technical rules requiring expert opinion or the board's special expertise, as was the case in Leib v. Board of Examiners for Nursing, supra. Rather, the statutory standard in this case is based on factors and considerations that are or should be within the grasp of anyone who is licensed to carry a handgun outside the home or business. It is not, therefore, so vague as to be unconstitutional.
The plaintiff's second argument in support of his appeal is essentially that the board wrongly applied the statutory standard to the facts of his case. This argument requires a review of some general principles of administrative law.
"Judicial review of [an administrative agency's] action is governed by the Uniform Administrative Procedure Act (General Statutes, c. 54, 4-166 through 4-189), and the scope of that review is very restricted . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the [administrative agency] . . . The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of [its] discretion." (Citations and internal quotations marks omitted.) Board of Education v. Freedom of InformationCommission, 208 Conn. 442, 452 (1988). With respect to an agency's factual findings, "if the administrative record provides substantial evidence upon which the hearing officer could reasonably have based his finding . . . the decision must be upheld." Conn. Building Wrecking Co. v. Carothers, 218 Conn. 580,601 (1991).
In the present case, the board found that the plaintiff was carrying a handgun during an altercation in the parking lot of a bar while he was intoxicated. There was substantial evidence in the record, the testimony of police officers who were at the CT Page 879 scene, to support that finding and the court may not disturb it, therefore. This is so even though there was other evidence to the contrary. Newtown v. Keeney, 234 Conn. 312, 319-320.
In order to determine that a person is "unsuitable" to continue to hold a gun permit, the law requires that there be facts sufficient to show generally that he or she lacks "the essential character or temperament necessary to be entrusted with a weapon." Dwyer v. Farrell, supra; Rabbitt v. Leonard, supra. More specifically, the facts found by the board should show or provide a logical inference that the person poses some danger to the public if allowed to carry a weapon outside the home or business. Storace v. Mariano, 35 Conn. Sup. 28, 33 (1978).
It requires no stretch of the imagination to conclude that the mixture of guns and alcohol is potentially deadly. In the present case, the board's finding that the plaintiff carried a handgun on his person while intoxicated and at the scene of a violent public disturbance clearly supports the inference that he poses a danger to the public if he continues to be allowed to carry a handgun outside his home or business. It was not, therefore, unreasonable for the board to conclude that the plaintiff is not suitable to continue to hold a permit for that purpose.
For all of the reasons set forth above, the plaintiff's appeal is dismissed.
MALONEY, J.