[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The Plaintiff, Henry Crane, is appealing from an administrative ruling by the Defendant Board of Firearms Permit Examiners which affirmed the decision of the Commissioner of Public Safety to revoke the Plaintiff's permit to carry a pistol or revolver in this state.
The Defendant rendered its written decision on March 6, 1998, following an administrative hearing which it conducted on February 18, 1998. The Board acted pursuant to the provisions of C.G.S. 29-32b. The Plaintiff's appeal to this court is authorized by C.G.S. 4-183.
The court finds that the Plaintiff's appeal was timely filed, and that the Defendant received appropriate notice of this proceeding. Because the Plaintiff's license to carry a firearm was revoked as a result of the Board's action, the court finds that Mr. Crane is "aggrieved" within the meaning of C.G.S. 4-183, and has exhausted all of his available administrative remedies. The court finds that it has jurisdiction to determine this administrative appeal.
Although the Plaintiff had been represented by counsel at the administrative hearing in February 1998, he appeared pro se in this appeal. In filing this action, the Plaintiff designated the Chairman of the Board of Firearms Permit Examiners, and several individuals who are not members of that board, as defendants therein.[1] The court has reviewed the Plaintiff's pleadings and finds that they speak only to the administrative action taken by the Board of Firearms Permit Examiners. Furthermore, C.G.S.4-183 only authorizes the Superior Court to engage in the review of administrative decisions rendered by the state's administrative boards and agencies. For these reasons, the court finds that the Board of Firearms Permit Examiners is the only appropriate Defendant in this action, and will construe the pro se Plaintiff's designation of "Chairman of the Board of Firearms Permit Examiners" to be a citation of the agency as a party to this action. The court further finds as a matter of law that it CT Page 12060 lacks jurisdiction with respect to all of the named individual defendants. For that reason, the court, on its own motion, dismisses this action with respect to each of those individual parties.
 FACTUAL FINDINGS
The court, having carefully reviewed and considered the case record and transcript of the administrative hearing, makes the following findings of fact:
On August 28, 1996, the Plaintiff was arrested by the Willimantic Police Department on charges of threatening, reckless endangerment and breach of the peace after he allegedly pointed a handgun at an automobile containing two teenage females. victims, Police Officer John Chasse responded to the Plaintiff's address in Willimantic to investigate.[2] (Transcript, Page 5).
While interviewing the Plaintiff, Officer Chasse observed several firearms in plain view in the Plaintiff's apartment. (Transcript, Page 5). A loaded firearm was found on the Plaintiff's person. (Transcript, Page 10). Unloaded firearms were also located ". . . under his pillow, in jacket pockets, pants pockets, on a chair in the kitchen underneath a cushion." (Transcript, Page 6). The police also found other weapons locked in a safe. (Transcript, Page 10). Officer Chasse testified to the board that: "Basically, the weapons were strewn throughout the apartment." (Transcript, Page 6). The police seized the firearms which were found in the Plaintiff's residence. Among the items recovered were a firearm and a bandanna which were similar in description to a handgun and a cloth described by the alleged victims at the time of the incident. (Transcript, Page 5). The police also found ". . . a decent amount of ammunition within the residence . . ." (Transcript, Page 6).
Officer Chasse also testified that the building where the Plaintiff lived is "a known house where drug addicts hang and stay." (Transcript, Page 8). He added:
 "We've been there quite often for narcotics overdoses. We've actually, the last three times I've been there we've removed deceased people from heroin overdoses." (Transcript, Page 8).
The Plaintiff never admitted pointing the gun at the women. (Transcript, Page 6). The criminal charges resulting against him from the August 28, 1996 incident were subsequently dismissed, CT Page 12061 after the two alleged victims failed to appear in court. (Transcript, Pages 4, 11, 16 and 17).
On July 23, 1994, a man who had been staying with Mr. Crane committed suicide in the Plaintiff's apartment. (Transcript, Page 7). This occurred at a location in Willimantic different from the one where the Plaintiff currently resides. (Transcript, Page 18). The decedent, who had been despondent due to the breakup of his marriage, took his life with a firearm which was owned by the Plaintiff and kept in his apartment. (Transcript, Page 7). The Plaintiff had allowed the decedent access to his guns over a period of time. (Transcript, Page 7).
As noted above, the Defendant board conducted an administrative hearing concerning the revocation of the Plaintiff's permit on February 18, 1998. The Plaintiff attended the hearing and was represented by counsel, who cross-examined witnesses and advocated on his behalf. The Plaintiff did not testify at the hearing. The board issued a written decision, upholding the revocation of the Plaintiff's permit to carry pistols or revolvers, on March 6, 1998. The board's decision noted ". . . that there is just and proper cause for the revocation because both the appellant's careless attitude towards the storage of firearms, in spite of a past tragedy, and his refusal to testify indicate that he lacks the judgment necessary to be considered a suitable person." (Letter to the Plaintiff from the Board of Firearms Permit Examiners dated March 6, 1998).
 DISCUSSION
The Defendant affirmed the revocation pursuant to the provisions of C.G.S. 29-32, which states in part:
 "Any permit for the carrying of any pistol or revolver may be revoked by the authority issuing the same for cause and shall be revoked by the authority issuing the same upon conviction of the holder of such permit of any felony or of any misdemeanor specified in subsection (b) of section 29-28, or upon the occurrence of any event which would have disqualified the holder from being issued the permit pursuant to subsection (b) of section 29-28."[3]
In his written memorandum and oral argument to this court, the Plaintiff claimed that because he was not convicted of any crime in connection with this matter, and is not disqualified under any of the provisions of C.G.S. 29-28(b), the board acted CT Page 12062 illegally and in abuse of its discretion. However, that argument overlooks the discretionary authority granted to the issuing authority under C.G.S. 29-32. While the law sets forth specific reasons for mandatory revocation, it also provides that "Any permit for the carrying of a pistol or revolver may be revoked bythe authority issuing the same for cause . . ." (emphasis added). Accordingly, this court must analyze whether or not the evidence in the case record established cause for the Defendant's finding that the Plaintiff was no longer a suitable person to carry firearms.
The applicable statutes do not specifically define the terms "cause" and "suitable." Within the context of its usage in C.G.S.29-32, the court interprets "cause" to mean a valid reason justifying the action taken by the board.[4] The word "suitable," as it applies to license holders, was given the following meaning by one Connecticut Court:
 "A person is `suitable' who by reason of his character — his reputation in the community, his previous conduct as a licensee — is shown to be suited or adapted to the orderly conduct of a business which the law regards as so dangerous to public welfare that its transaction by any other than a carefully selected person duly licensed is made a criminal offense." Smith's Appeal from County Commissioners, 65 Conn. 135, 138 (1894).
"General Statutes 29-28 through 29-38 clearly indicate a legislative intent to protect the safety of the general public from individuals whose conduct has shown them to be lacking the essential character or temperament necessary to be entrusted with a weapon." Rabbit v. Leonard, 36 Conn. Sup. 108, 115-116,413 A.2d 489 (1979); Dwyer v. Farrell, 193 Conn. 7, 12-13 (1984). (Internal quotation marks omitted). "The facts found by the board should show or provide a logical inference that a person poses some danger to the public if allowed to carry a weapon outside of the home or business." Fellows v. Board of Firearms Permit Examiners, (Maloney, J.), Judicial District of Hartford, CV 960558357, (February 7, 1997), citing Storace v. Mariano, 35 Conn. Sup. 28,33 (1978).
The court finds that the evidence introduced at the administrative hearing supported the finding by the board that the Plaintiff displayed a "careless attitude" toward the storage of firearms. Approximately two years before the incident in 1996, a despondent person residing with Mr. Crane gained access to one CT Page 12063 of the Plaintiff's handguns and used the weapon to kill himself. Despite that tragic and shocking occurrence, the Plaintiff subsequently left numerous firearms (and a significant quantity of ammunition) "strewn" about his apartment. The apartment was located in a building where drug abusers with serious narcotics addiction problems were known to live or congregate. Given those facts, the board was entitled, as it did, to draw the inference that the Plaintiff's cavalier attitude about the security and storage of his firearms created the risk that they could be stolen or misused. The board was also entitled to conclude that this was evidence of the Plaintiff's lack of judgment, and of his unsuitability to carry lethal firearms in public, where the security and safe handling of such weapons would be of equal — if not greater — importance. (See Fellows v. Board of Firearms PermitExaminers, supra, in which Judge John Maloney's decision suggests that one indicium of unsuitability could be a permit holder's loss or improper storage of a firearm in a place where it would be at high risk of falling into the wrong hands).
The Plaintiff has also challenged the board's finding that he was unsuitable because of his refusal to testify at the hearing.[5] Mr. Crane asserts that because he had the right to remain silent, the board could not draw an adverse inference from his decision to do so. The court is not persuaded by this argument. The respondent was confronted at the administrative hearing by evidence which reflected negatively on his judgment, and his suitability to carry handguns. He elected not to testify personally at the hearing. "The [Fifth Amendment] privilege does not forbid the drawing of adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." Olin Corporation v.Castells, 180 Conn. 49, 53 (1980). See also Lovett v. Board ofFirearms Permit Examiners, Judicial District of Waterbury, CV 960131592 (March 4, 1997), in which Judge Maloney ruled that the board was entitled to draw a negative inference from a plaintiff's failure to testify fully in response to negative evidence which had been offered against him by a police officer at a pistol permit revocation hearing.
In light of the totality of the evidence and testimony presented at the board's hearing, the court finds that it was reasonable and permissible for the Defendant to draw adverse inferences about the Plaintiff's failure to testify. However, the court also finds that even if the board's action in this regard was in excess of its authority, the Defendant's other finding concerning the Plaintiff's careless attitude about the storage of CT Page 12064 his firearms was sufficient, in and of itself, to justify revocation for cause.
Our statutes and case law make it clear that the court may not retry this case, or substitute its judgement for that of the administrative agency. Rather, the court's mandate is to determine whether or not, based on the evidence contained in the record, the board acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. Board of Education v. Freedom ofInformation Commission, 208 Conn. 442, 452 (1980).
 ADJUDICATION
Based upon its review of the record in this matter, the court finds by a preponderance of the evidence that there was cause under C.G.S. 29-32 for the Defendant to affirm the revocation of the Plaintiff's permit to carry a pistol or revolver in Connecticut. The evidence adduced at the administrative hearing supported the board's finding that the Defendant could no longer be considered a suitable person to possess such a license. The court finds that the Defendant's action was not unreasonable, arbitrary, illegal, or an abuse of its discretion. Accordingly, the Plaintiff's appeal is hereby DISMISSED.
 SO ORDERED.
BY THE COURT:
Dyer, J.