## DANIEL C. MACLEAN ET AL. *v.* TOWN OF DARIEN ET AL.
### (13356)

Dupont, C. J., and Schaller and Spallone, Js.

Argued April 29—officially released September 17, 1996

*Ridgely W. Brown,* for the appellants (plaintiffs).

*Randolph T. Lovallo,* for the appellees (defendants).

SPALLONE, J. The plaintiffs appeal from the judgment of the trial court dismissing their challenge to the decision of the board of tax review of the town of Darien regarding a tax assessment on real property they own. On appeal, they claim that the trial court (1) improperly failed to consider disproportionate valuation questions when the decennial revaluation process, as set forth in General Statutes § 12-62, failed to conform to the statutory requirements for revaluation in violation of General Statutes § 12-119[1] and (2) placed

---

[1] Although the plaintiffs' brief appeared to base this argument on both General Statutes § 12-118 (now § 12-117a) and § 12-119, counsel for the plaintiffs informed the court at oral argument in this appeal that the plaintiffs

a clearly erroneous assessment on the improvements on the property.[2]

The trial court found the following facts. The plaintiffs own 2.88 acres of waterfront residential property at 25 Contentment Island Road, Darien, which they purchased in October, 1986, for $3,400,000. The subject property fronts on its own sandy beach and is improved by a residence built in 1916, consisting of ten rooms, including five bedrooms, plus five full baths and a half bath.

On October 1, 1988, the defendants, pursuant to General Statutes § 12-62, performed a decennial revaluation of all of the real estate in the town of Darien. As a result of the revaluation, the tax assessor of the town of Darien determined that the fair market value of the subject property was $2,500,900 ($1,602,500 for the land and $898,400 for improvements), and the assessment value

make no claim before this court under § 12-118. We therefore deem any § 12-118 claim abandoned and address only the § 12-119 claim.

[2] General Statutes § 12-119 provides: "Remedy when property wrongfully assessed. When it is claimed that a tax has been laid on property not taxable in the town or city in whose tax list such property was set, or that a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property, the owner thereof or any lessee thereof whose lease has been recorded as provided in section 47-19 and who is bound under the terms of his lease to pay real property taxes, prior to the payment of such tax, may, in addition to the other remedies provided by law, make application for relief to the superior court for the judicial district in which such town or city is situated. Such application may be made within one year from the date as of which the property was last evaluated for purposes of taxation and shall be served and returned in the same manner as is required in the case of a summons in a civil action, and the pendency of such application shall not suspend action upon the tax against the applicant. In all such actions, the superior court shall have power to grant such relief upon such terms and in such manner and form as to justice and equity appertains, and costs may be taxed at the discretion of the court. If such assessment is reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes in accordance with the judgment of said court."

(at 70 percent of fair market value) was $1,750,630 ($1,121,750 for land and $626,880 for improvements). The trial court found that although "the method used by Sabre Systems, which was hired to conduct a town-wide, mass appraisal, was flawed in the sense that it fails to sufficiently take into account individual characteristics of a particular piece of property" "in this specific instance, Sabre Systems' appraisal seems to be reasonably on target." The court found that the defendants' appraiser was more credible than the plaintiffs' appraiser and that the assessment in question was neither "excessive" nor "manifestly excessive." Accordingly, it rendered judgment in favor of the defendants.

We note that in the trial court's original memorandum of decision dated December 15, 1993, the court found that the plaintiffs had failed to establish that the assessment was either excessive or manifestly excessive, and, therefore, "dismissed" the case for lack of aggrievement.[3] The court's own words in that memorandum, however, belie the finding of lack of aggrievement because the court heard evidence, made findings and rendered judgment *on the merits* in favor of the defendants, setting the amount of the assessment at the same amount as had been set by the assessor. Moreover, in its amended memorandum of decision dated February 2, 1994, in response to the plaintiffs' motion to reargue, the court did not refer to "dismissal" of the action for lack of aggrievement. It again unequivocally found in favor of the defendants on the merits and, accordingly,

---

[3] The trial court equated lack of aggrievement with a failure to sustain the plaintiffs' burden of proof that their property was overvalued. Aggrievement, instead, relates to the standing of a plaintiff to bring an action and is to be decided by a court before reaching the merits. "Standing focuses on whether a party is the proper party to request adjudication of the issues, rather than on the substantive rights of the aggrieved parties." (Internal quotation marks omitted.) *Herzog Foundation, Inc.* v. *University of Bridgeport*, 41 Conn. App. 790, 793, 677 A.2d 1378 (1996). The trial court's reference to "standing" did not relate to jurisdiction. In any event, the court clearly had jurisdiction.

on the same date, rendered judgment on the merits. It is that judgment that we review herein.

In an appeal involving a decision of an administrative body,[4] the trial court has subject matter jurisdiction only if the plaintiff has standing to bring the action by virtue of his being an "aggrieved party." *Park City Hospital* v. *Commission on Hospitals & Health Care*, 210 Conn. 697, 702, 556 A.2d 602 (1989). The plaintiffs are statutorily aggrieved because § 12-119 provides that an owner may bring an action when he claims "that a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property . . . ." General Statutes § 12-119. The plaintiffs claim to be aggrieved because of this statutory provision and have standing to maintain this action. See *General Realty Improvement Co.* v. *New Haven*, 133 Conn. 238, 50 A.2d 59 (1946) (construing General Statutes [1941 Sup.], § 165f [a predecessor to § 12-119]).

I

The plaintiffs first claim that the trial court improperly failed to consider "disproportionate valuation questions where the trial court itself found that the mass appraiser failed sufficiently to take into account individual characteristics of particular pieces of property."

"[Section] 12-119 allows a taxpayer to bring a claim [1] that the tax was imposed by a town that had no authority to tax the subject property, or [2] that the assessment was manifestly excessive *and* could not have been arrived at except by disregarding the provi-

[4] Unlike a § 12-117a appeal, an appeal pursuant to § 12-119 is not an appeal *from* an administrative decision, but, rather, is a separate action to the trial court. The administrative decision is nevertheless the subject of the Superior Court action.

sions of the statutes for determining the valuation of [the real] property . . . ." (Emphasis in original; internal quotation marks omitted.) *Pauker* v. *Roig*, 232 Conn. 335, 340–41, 654 A.2d 1233 (1995). The plaintiffs' claim falls into the second category.

On the face of § 12-119, as well as under *Pauker* v. *Roig*, supra, 232 Conn. 335, in order to prevail on a claim under the statute, the plaintiffs must demonstrate *both* a "manifestly excessive" assessment *and* disregard of the statutes in arriving at that assessment. "There is no mandatory formula for determining what is 'manifestly excessive' . . . and in any assessment case, the trial court is confronted with conflicting accounting methods; giving credence to one over the other is a proper exercise of its function as a trier of fact." (Citations omitted.) *Connecticut Coke Co.* v. *New Haven*, 169 Conn. 663, 666, 364 A.2d 178 (1975).

"Courts must be cautious in choosing between conflicting systems [of assessment] since those calculations, although made in the best of faith, can lead to widely divergent results. . . . At the same time, proper deference must be given to the judgment and experience of assessors. In reviewing valuations, we must bear in mind that the process of estimating the value of property for taxation is, at best, one of approximation and judgment, and that there is a margin for a difference of opinion. . . . The law contemplates that a wide discretion is to be accorded to assessors, and unless their action is discriminatory or so unreasonable that property is substantially overvalued and thus injustice and illegality would result, their opinion and judgment should control in the determination of value for taxation purposes." (Citation omitted; internal quotation marks omitted.) Id., 667–68.

In making factual findings, "[t]he trier is not limited to arbitrating the differing opinions of the witnesses

but is to make determinations in the light of all the circumstances, the evidence [and] his general knowledge . . . ." *Filipetti* v. *Filipetti*, 2 Conn. App. 456, 458–59, 479 A.2d 1229, cert. denied, 194 Conn. 804, 482 A.2d 709 (1984). "The trier may accept or reject the testimony of an expert, offered by one party or the other, in whole or in part." Id., 459. "[F]actual findings of a trial court . . . are reversible only if they are clearly erroneous. . . . This court cannot retry the facts or pass upon the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is *no* evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Cellu Tissue Corp.* v. *Blake Equipment Co.*, 41 Conn. App. 413, 420, 676 A.2d 405 (1996). " 'We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported.' " *Lukas* v. *New Haven*, 184 Conn. 205, 208, 439 A.2d 949 (1981).

The record, including the trial court's twelve page memorandum of decision, reveals that the court conducted a trial de novo, at which it heard considerable testimony with regard to the value of the improvements on the property, including appraisal reports and testimony from several sources on the issue of relative property values, and that it carefully considered all of the evidence presented. The court's memorandum of decision indicates that the trial court, in particular, considered the testimony presented by both the plaintiffs' and the defendants' experts on the issue of valuation, and found the testimony of the defendants' expert more

credible than that of the plaintiffs' expert. The trial court also specifically found that the plaintiffs' assessment was neither excessive nor manifestly excessive. The trial court, based on its review of all of the evidence before it, performed its own assessment, and the plaintiffs have not demonstrated any flaw in the assessment performed by the court. The court set a fair market value on the property of $2,500,900 ($1,602,500 for the land and $898,400 for the improvements) and an assessment value of $1,750,630 ($1,121,750 for the land and $628,880 for the improvements), which was the same as that determined by the defendants. Although the court found that "the method used by [the defendants to assess the property] was flawed in the sense that it fails to sufficiently take into account individual characteristics of a particular piece of property" the court stated that "[i]n this specific instance, [the] appraisal seems to be reasonably on target."

We conclude that the trial court properly determined the value of the property, which valuation coincided with that of the defendants, and properly determined that the assessment was neither excessive nor manifestly excessive.[5] Because the plaintiffs have failed to establish that their assessment was "manifestly excessive," we do not reach the issue of whether the assessment method employed by the defendants violated the statutes. See *Pauker* v. *Roig*, supra, 232 Conn. 335.

## II

The plaintiffs' second claim is that the trial court's fair market valuation of the improvements on the property at $898,400 was clearly erroneous. The basis of

---

[5] Moreover, counsel for the plaintiffs stated at oral argument that "the entire thrust of [their] case is that they are not claiming overvaluation" and, in fact, that "all of the properties [in this area] were undervalued." Thus, the plaintiffs do not even claim the "manifestly excessive" valuation required to prevail under § 12-119.

the plaintiffs' claim is the trial court's finding that the appraisal process was "flawed" and that testimony was given that the amount for which the property was insured was less than the value determined by the appraiser. We conclude that the trial court's valuation was not clearly erroneous.

The burden is on the party claiming aggrievement to prove that "the assessor's valuation [is] not the true and actual value of the property." *Executive Square Ltd. Partnership* v. *Board of Tax Review*, 11 Conn. App. 566, 571, 528 A.2d 409 (1987). As discussed in part I, the plaintiffs have failed to carry that burden. Where the value placed on the property by the assessor is correct and "[t]he trial court has found the true and actual values of the propert[y] to be the same as [that] determined by the assessors, and . . . these findings [of the trial court] . . . are obviously made . . . upon all the evidence in the case" there is no remedy. *Slosberg* v. *Norwich*, 115 Conn. 578, 581, 162 A. 772 (1932). The trial court, by its own independent valuation of the property based on the evidence placed before it at trial, found that the assessor's valuation of the improvements was correct. Following our review of the record, discussed in part I, we cannot say that that finding was clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.