[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action is an appeal by the plaintiff, Pinnacle Realty, LLC (Pinnacle), challenging the decision of the Board of Tax Review of the City of Hartford denying its claim for relief from an excessive tax assessment. Pinnacle challenges the fair market valuation placed upon its property by the assessor on the grand lists of October 1, 1994, 1995, 1996, and 1997.
The subject property is known as 35-39 Lafayette Street and 1-3 Grand Street. The premises are presently used as a parking lot known as Courthouse Parking. The property contains 0.40 acre, or 17,329 square feet of land, and is located at the intersection of Lafayette Street and Grand Street diagonally across the street from the courthouse at 95 Washington Street. In August of 1989, the Hartford Zoning Board of Appeals approved the lot for a 49 space open parking lot.
The valuation date, for the purpose of this appeal, is October 1, 1989, the last revaluation conducted by the City of Hartford. On October 1, 1989, the subject property was improved with a two-story office building located at 35-39 Lafayette Street, and a residential two-story building at 1-3 Grand Street. These improvements were demolished sometime after November 1990 pursuant to a demolition permit issued to a former owner on November 30, 1989.
On October 1, 1989, G M F Realty Associates was the owner of the subject premises. Gordon, Muir Foley, a Hartford law CT Page 7822 firm, occupied the building at 35-39 Lafayette Street. G M F Realty Associates had acquired the premises on July 20, 1978, for $155,000. On November 1, 1989, G M F Realty conveyed the premises to Courthouse Parking, Inc., for $1,000,000. We note that the city's appraiser, Anthony DeLucco, reported in his appraisal report (defendant's exhibit 1), that the sale price of the subject on November 1, 1989, was $1,020,800, which included $20,800 for demolition costs. Courthouse Parking, Inc. obtained a mortgage from the First Central Bank in the amount of $1,105,000. The intended use of the property by Courthouse Parking, Inc. was to construct a high rise garage parking facility on the site. However, due to a change in the economic climate, the development never materialized. The plaintiff acquired the property in 1994 for $151,000.
The assessor for the city valued the premises on October 1, 1989, at $735,000 with a tax assessment, at 70% of fair market value, of $514,500. The assessor's street card attached to the plaintiff's appraisal report (plaintiff's exhibit A) shows the breakdown of value by the assessor at $724,200 for the land and $10,800 for the building for a total valuation of $735,000.
The plaintiff's appraiser, John LoMonte, determined that the highest and best use of the subject premises was as an open parking lot. However, on October 1, 1989, the subject was not being used as a parking lot but rather was improved with an office and residential building. Given the value placed upon the improvements by the assessor of $10,800, the commercial or residential use of the improvements at that time must have been minimal. Considering the city's August, 1989 approval of the use of the subject premises as a parking lot, LoMonte was justified in concluding that use as a parking lot was the highest and best use of the premises on October 1, 1989.
The city's appraiser, DeLucco, recognizing that the improvements on the subject property would be demolished in November of 1989, concluded that the highest and best use of the site was for commercial development such as an office building for attorneys or related services.
Given the disparity between the opinions of the appraisers, the highest and best use of the subject premises is key to the final determination of the fair market value of the subject property on October 1, 1989. CT Page 7823
"The highest and best use of a specific parcel of land is not determined through subjective analysis by the property owner, the developer, or the appraiser; rather, highest and best use is shaped by the competitive forces within the market where the property is located. Therefore the analysis and interpretation of highest and best use is an economic study of market forces focused on the subject property." The Appraisal Institute, The Appraisal of Real Estate (10th ed. 1992), pp. 275-76.
The competitive forces in existence on October 1, 1989, as applied to the subject, were noted by LoMonte in his appraisal report (plaintiff's exhibit A, p. 38) as the close proximity of the subject to the Connecticut Superior Court complex, the acute shortage of parking spaces in the vicinity, and the legal use of the subject as an open parking lot. Indeed, Courthouse Parking, Inc. paid $1,000,000 for the property in order to construct a parking garage on the site. From a practical standpoint, market forces were in evidence on October 1, 1989, which made a commercial parking lot the highest and best use of the subject property, not an office or residential building lot.
Concluding, as we do, that the highest and best use of the subject property is for use as a commercial parking lot, we next turn to the valuation of the property based upon this highest and best use. We agree with DeLucco that a sale of the subject property at or near the valuation date is an important indicator of value of the property at that time providing the sale was an arm's length transaction between a willing seller and a willing buyer. See Appraisal Institute, The Appraisal of Real Estate (10th Ed. 1992) p. 406. Sales comparison is the preferred method to value land when comparable sales are available. However, LoMonte ruled out the use of the comparable sales approach and used only the income approach. LoMonte did not consider the sale in November of 1989 of the subject property as a comparable sale. In spite of the sale of the subject for $1,000,000 on November 1, 1989, DeLucco valued the subject as of October 1, 1989, at $695,000. DeLucco used the November, 1989 sale as his first comparable, adjusting the sale down 30% because of the favorable financing. Even the assessor for the city did not give credence to the $1,000,000 sale of the subject, since the assessor's valuation as of October 1, 1989, was $735,000. We do not find the other three comparable sales utilized by DeLucco to be useful because of questionable financing and differences in zone and quality of location as well as the fact that his highest and best use was for office use. DeLucco adjusted all four sales to arrive CT Page 7824 at a square foot value of $40. DeLucco's final valuation of the subject as of October 1, 1989 was $695,000 (17,329 square feet x $40 = $693,160 rounded to $695,000). The only comparable used by DeLucco that has value is the sale of the subject on November 1, 1989. Although this sale is competent evidence to show its market value, it is not controlling. O'Brien v. Board of Tax Review,169 Conn. 129, 136, 362 A.2d 914 (1975). We have very limited information on the subject's sale other than the more than 100% financing, and the high sale price that appears to be based on speculation rather than sound financial values. Cf. O'Brien v.Board of Tax Review, supra, 135-36.
LoMonte, using only the income approach, arrived at the fair market value of the subject on October 1, 1989, as $240,000. This value was based on a research of the major parking lot owners and operators in the Hartford area. Based on this research, LoMonte developed pro forma figures from the market to arrive at a net operating income of $24,089. Selecting a capitalization rate of 10%, LoMonte arrived at the $240,000 fair market value of the subject. It is difficult to rationalize LoMonte's fair market value of $240,000 when one month after the revaluation date the land sold for $1,000,000.
We find that LoMonte's use of the income approach combined with the selection process of obtaining the market data for parking lots was appropriate, although speculative. One part of the process used by LoMonte that we find inconsistent, however, is his estimate of $12,410 in taxes. See MacLean v. Town ofDarien, 43 Conn. App. 169, 174, 682 A.2d 1064, cert. denied,239 Conn. 943, 686 A.2d 122 (1996). Mathematically, at a tax rate of 32.40 mills per $1,000 used by LoMonte, this represents a value estimate of over $500,000, not the $240,000 value arrived at by LoMonte. We are also not unmindful of the November, 1989 sale of the subject for $1,000,000 used by DeLucco as a valid comparable sale when this sale occurred at a time when its approved use was consistent with that use selected by LoMonte.
Considering the factors that we have discussed and the opinions of the appraisers, the claims of the parties in light of all of the circumstances in evidence bearing on value including the sale of the subject so close to the revaluation date, and our own general knowledge of the elements going to establish value, we conclude that the fair market value of the subject property on October 1, 1989, was $600,000. CT Page 7825
Judgment may enter sustaining the plaintiff's appeal without costs to either party.
Arnold W. Aronson Judge Trial Referee